IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TWANY L DINGLE, et al, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. H-05-3719 |
| | ) | |
| | ) | |
| HALLIBURTON COMPANY, et al, | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OPINION**

Before the court is the Defendants' motion to dismiss for failure to state a claim upon which relief can be granted.  Doc. 25.  The Plaintiffs responded and asked this court to either deny the motion or to grant them leave to amend their complaint to correct any deficiencies.  Doc. 38.

The Defendants are Halliburton Company, Kellogg Brown & Root, Inc., Kellogg Brown & Root Services, Inc., DII Industries, LLC, Service Employees International, Inc., Kellogg Brown & Root International, Inc., and Overseas Administration Services.  Because the differences between them have no relevance to deciding their pending motion, they will be identified as "the Defendants" without any distinction drawn between them.

The Plaintiffs are former employees of the Defendants who raised two categories of claims in their complaint.  Doc. 10.  First, they alleged that the Defendants violated provisions of a contract between the Defendants and the Department of the Army.  Second, they alleged that the Defendants violated provisions of a standard contract between each individual Plaintiff and

the Defendants. Each category of allegation raises distinct legal and factual issues that should be addressed separately.

The Defendants' motion is GRANTED in part and DENIED in part. Doc. 25.

## I. STANDARD OF ANALYSIS UNDER RULE 12(b)(6).

By seeking a dismissal of the Plaintiffs' case without raising any evidentiary issues, the Defendants bear a difficult burden because "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Allowing complaints to survive motions to dismiss follows the rule that "[a]ll pleadings shall be so construed as to do substantial justice." Fed. R. Civ. P. 8(f). By construing pleadings to do substantial justice, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley,* 355 U.S. at 48. In fact, even pleading faulty legal theory is not fatal to a plaintiff's claim and a "dismissal will not be affirmed if the allegations support relief on any possible theory." *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir. 1994), cert. denied 513 U.S. 868 (citing *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992)); *see also Walther v. National Tea Co.,* 848 F.2d 518 (5th Cir. 1988); *Rathborne v. Rathborne,* 683 F.2d 914 (5th Cir. 1982); *Quinonez v. National Ass'n of Secs. Dealers, Inc.,* 540 F.2d 824 (5th Cir. 1976); *Robertson v. Johnston,* 376 F.2d 43 (5th Cir. 1967); *Due v. Tallahassee Theatres, Inc.,* 333 F.2d 630 (5th Cir. 1964); *Mannings v. Board of Public Instruction of Hillsborough County, Fla.,* 277 F.2d 370 (5th Cir. 1960); and *Dotschay for Use and Benefit of Alfonso v. National Mut. Ins. Co. of District of Columbia,* 246 F.2d 221 (5th Cir. 1957). Similarly, that fact that a complaint is vague provides no grounds for dismissing it. *Glus*

*v. Brooklyn Eastern Dist. Terminal,* 359 U.S. 231, 235 (1959) (citing *Conley,* 355 U.S. at 47-48). Thus, "[i]n most cases, challenges to 'barebones pleadings' are doomed with respect to an attack based on a failure to state a claim." *Colle v. Brazos County, Tex.,* 981 F.2d 237, 243 (5th Cir. 1993) (citing *Cook & Nichol, Inc. v. Plimsoll Club,* 451 F.2d 505, 506-07 (5th Cir. 1971)). These holdings suggest that when a plaintiff's complaint omits details, the court should draw inferences that would support a claim for relief provided that some allegations suggest that the plaintiff can establish all essential elements of the claim. However, a court need not draw inferences from a plaintiff's complaint that contradict "documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.,* 336 F.3d 375, 379 (5th Cir. 2003) (citing *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017-18 (5th Cir.1996).

## II.   COUNTS I AND II, THE LOGCAP III CONTRACT

In their first two counts, the Plaintiffs allege that the Defendants violated a provision of a logistics contract between the Defendants and the Army. The relevant provision of the contract required the Defendants to pay the Plaintiffs overtime pay. The Defendants argue that governing law renders the clause void. Determining the validity of the relevant clause requires this court to define the scope of authorities governing the formulation and interpretation of government contracts, describe the particular contract at issue in this case, and then analyze the viability of the Plaintiffs' allegations.

### A.  Specialized legal authority interprets government contracts.

The law governing contracts with government agencies is strictly regulated by a specific set of statutes and a single regulation. Both the statutes and regulation have been interpreted by specialized courts and a limited number of secondary sources.

According to procurement statutes, all acquisitions by executive agencies are subject to the terms of a number of statutes whose requirements are embodied in "a single Government-wide procurement regulation called the Federal Acquisition Regulation" (FAR). 41 U.S.C. § 405; see also 41 U.S.C. § 405a; 41 U.S.C. § 421(c)(1); 48 C.F.R. § 1.101; and *Newport News Shipbuilding and Dry Dock Co. v. Garrett,* 6 F.3d 1547, 1551 (Fed. Cir. 1993). The FAR appears as Title 48 of the Code of Federal Regulations and has "the full force and effect of law" because it was "issued under statutory authority." *S.J. Amoroso Const. Co., Inc. v. U.S.,* 26 Cl. Ct. 759, 764 (1992). It consists of 52 parts. Part 52 contains the actual text of standardized contract clauses incorporated into final contracts with executive agencies. Parts 1 through 51 contain instructions dictating which clauses from Part 52 any particular contract must or must not contain.

Specialized courts have developed an extensive body of case law interpreting the FAR and its predecessors. These specialized courts include the United States Court of Federal Claims, the successor to the United States Claims Court and Court of Claims, as well as boards of contract appeals for contracts with specific agencies such as the Armed Services Board of Contract Appeals. Opinions of these specialized boards, "though persuasive, are not accorded stare decisis effect[.]" *Universal Restoration, Inc. v. U.S.,* 16 Cl. Ct. 214, 218 (1989); see also, *Corrigan v. U.S.,* 70 Fed. Cl. 665, 673 (2006); *XTRA Lease, Inc. v. U.S.,* 50 Fed. Cl. 612, 624 (2001); and *Transam. Ins. Co. v. U.S.,* 31 Fed. Cl. 602, 605 n. 1 (1994). The decisions of the United States Court of Federal Claims, United States Claims Court, and Court of Claims appear in the Federal Reporter, the Federal Supplement, and specialized reporters named for each court. A Westlaw library, FEDCL, compiles decisions from these courts. The opinions of Boards of

4

Contract Appeals appear in other, less formal, compilations including a Westlaw library, FGC-BCA.

This case law and the FAR are also the subject of several comprehensive secondary publications such as a single volume that addresses the FAR, W. Noel Keyes, *Government Contracts Under the Federal Acquisition Regulation* (3rd ed. 2003), and a loose-leaf multi-volume treatment of the general law of government contracts updated regularly: John Cosgrove McBride, *Government Contracts: Cyclopedic Guide to Law, Administration, Procedure* (1962).

The case law generated by these courts and explained in these secondary sources generally relies on common law principles, but often deviates from them in important ways. Because an extensive body of specifically applicable case law exists and because that case law deviates from the common law occasionally, decisions issued by state courts or restatements of the law are rarely the most persuasive or authoritative sources for valid interpretations of contracts with agencies of the federal government.[1]

### B. Army procurement contracts incorporate the terms from the FAR.

The Department of the Army meets some of its support and logistical needs by hiring civilian contractors. The program for doing so is described as the Logistics Civil Augmentation Program (LOGCAP). The third LOGCAP contract (LOGCAP III), formally identified as contract DAAA09-02-D-0007, began on December 14, 2001. It is a 48-page

---

[1] For example, even though the parties cited Texas law to determine whether the Plaintiffs are third-party beneficiaries of the relevant government contract, the Westlaw libraries containing decisions by the various courts in which parties seeking compensation from the federal government file cases and the boards of contract appeals contain 286 cases that include the term "third party beneficiary."

document that the Plaintiffs attached to their complaint. Doc. 25, Exh. 1. The "Name of Offeror or Contractor" is "Brown & Root Services," one of the Defendants. Doc. 25, Exh. 1 at 36.

The LOGCAP III contract itself does not specify the particular actions that the contractor must take. Instead, individual "Task Orders" state the Army's needs in detail. Task Order 0043, to be performed in Kuwait, and Task Order 0059, to be performed in Iraq, are most relevant to this case. Doc. 25, Exh. 2 and Exh. 3. Both task orders consist of many pages of forms and several addenda or similar modifications. An initial form, "DD Form 1155, Dec 2001," contains several numbered boxes describing elements of each Task Order. According to Box 1, both Task Order 0043 and Task Order 0059 are part of the "contract purch order/agreement no." DAAA09-02-D-0007, i.e., the LOGCAP III contract. Box 9 identifies the "Contractor" as "Brown & Root Services, a Division of Kellogg Brown & Ro" of Houston, Texas. Mary L. Wade accepted both Task Orders on behalf of the Defendants. On page six, a "List of Addenda" appears. The second addendum is "Attachment 002, Clause Matrix." The Defendants did not attach the addenda incorporated into the Task Orders when it filed its motion, but the Plaintiffs did attach them to their response. Doc. 38, Exh. A and Doc. 38, Exh. B.[2] The addendum states "[t]he following clauses are incorporated in this task order" and identify the disputed clause, Clause 52.222-4.

Clause 52.222-4, titled "contract work hours and safety standards act – overtime compensation," appears at 48 C.F.R. § 52.222-4 in the FAR. It reads: "No Contractor or

---

[2]The entire LOGCAP III contract is properly before the court as well as all Task Orders and addenda to task orders. The Defendants' arguments that the addenda to Task Order 0043 and Task Order 0059 are not before the court are without merit. First, the Defendants have provided no reason why the court could not take judicial notice of them. Second, the addenda are incorporated into the Task Orders by reference and the Task Orders are incorporated by reference into the LOGCAP III contract and the LOGCAP III contract is incorporated into the complaint by reference.

subcontractor employing laborers or mechanics (see Federal Acquisition Regulation 22.300) shall require or permit them to work over 40 hours in any workweek unless they are paid at least 1 and 1/2 times the basic rate of pay for each hour worked over 40 hours." 48 C.F.R. § 52.222-4(a). The instructions in the FAR direct the contracting officer to "[i]nsert the clause at 52.222-4, Contract Work Hours and Safety Standards Act – Overtime Compensation, in solicitations and contracts … when the contract may require or involve the employment of laborers or mechanics. However," the instructions caution, "do not include the clause in solicitations and contracts … [t]o be performed outside the United States[.]" 48 C.F.R. § 22.305(d).

Box 9 reveals the most significant different between the initial description of each Task Order. Box 9 of Task Order 0043 describes the "Type of Business" as a "Large Business Performing in U.S." whereas Task Order 0059 describes the "Type of Business" as a "Domestic Firm Performing Outside U.S." However Box 8 of a subsequent "amendment of solicitation/modification of contract" to Task Order 0043, and identified as form "NSN 7540-01-152-8070," describes the "Type of Business" as "Domestic Firm Performing Outside U.S." All subsequent amendments of Task Order 0043 describe the order as performed outside the United States.

### C. Agents of the government may not bind the government beyond their actual authority delegated to them.

The Plaintiffs allege that they were not "paid at least 1 and 1/2 times the basic rate of pay for each hour worked over 40 hours" as required by Clause 52.222-4. The Defendants argue that they were under no obligation to do so because Clause 52.222-4 never should have been incorporated into any task orders performed outside of the United States. To support their argument, they explain that a contracting officer may "not include [Clause 52.222-4] in solicitations and contracts … [t]o be performed outside the United States[.]" 48 C.F.R. §

22.305(d). The Plaintiffs respond by arguing that "[t]he 'guidance' in FAR Parts 1-51, does not supersede what the parties agree to in their contract. … language from Parts 1 – 51 is not incorporated into contracts." Doc. 38 at 12. These arguments raise the question of how to interpret a government contract when the actual contract executed by the parties deviates from the instructions contained in the FAR.

Although an agent of the Army executed both Task Order 0043 and Task Order 0059, "the principles of agency apply somewhat differently when the principal is a government, rather than a private, entity. In particular, it is often said that a government agent must have actual or implied authority in order to bind the government in a contract, as opposed to the apparent authority that enables agents to bind other entities." *Brunner v. U.S.,* 70 Fed. Cl. 623, 627 (2006) (containing a lengthy discussion of this rule's history). Thus, "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority." *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384 (1947).

In the provisions defining the duties of "Contract Officers," the FAR incorporates the holding of *Merrill* explicitly. Under the FAR, "[c]ontracts may be entered into and signed on behalf of the Government only by contracting officers." 48 C.F.R. § 1.601(a). These contracting offers "have authority to enter into, administer, or terminate contracts and make related determinations and findings." 48 C.F.R. § 1.602-1(a); *see also, Helix Elec., Inc. v. U.S.,* 68 Fed. Cl. 571, 584-85 (2005). Also, they bear responsibility for the contents of any contract

with an executive agency. 48 C.F.R. § 1.108(f) ("When an imperative sentence directs action, the contracting officer is responsible for the action, unless another party is expressly cited."). Despite their broad authority and responsibility, "[c]ontracting officers may bind the Government only to the extent of the authority delegated to them." 48 C.F.R. § 1.601(a). More specifically, "[t]he contracting officer must not modify provisions and clauses unless the FAR authorizes their modification." 48 C.F.R. § 52.104(a). If these provisions were not sufficiently authoritative, the FAR expressly prohibits the execution of a contract "unless the contracting officer ensures that all requirements of law, executive orders, regulations, and all other applicable procedures … have been met." 48 C.F.R. § 1.601(b).

### D. Statutes and regulations overrule contradictory terms in contracts with government agencies.

Because contracting officers must comply with the FAR, when a regulation requires a government contract to contain a term, courts read that contract as if it included the mandatory term, even though the final document that both parties executed omitted it. *G.L. Christian & Assoc. v. United States,* 312 F.2d 418, 424, 427 (Ct. Cl. 1963), cert. denied 375 U.S. 954. Conversely, if an applicable regulation forbids the inclusion of a particular term, then that term does not bind the government, even if the term appears in the final contract. *Yosemite Peak & Curry Co. v. United States,* 582 F.2d 552 (Ct. Cl. 1978); and *Charles Beseler Co.,* ASBCA No. 22669, 78-2 BCA ¶ 13,483, 1978 WL 2409 (1978) (unpaginated).

In *G.L. Christian,* the Department of the Army contracted to have housing built in Fort Polk, Louisiana pursuant to the Armed Services Procurement Regulations, a predecessor to the FAR. However, the Army decided to terminate the contracts when "the project was only 2.036% complete and the work was substantially behind schedule." *G.L. Christian,* 312 F.2d at 423. An applicable regulation provided that a "standard [termination] clause shall be inserted in

all fixed-price construction contracts." *G.L. Christian,* 312 F.2d at 424 (citing 32 C.F.R. § 8.703 (1954)). The clause allowed a contracting officer to terminate any construction contract, providing the contractor with compensation according to "a formula which did not encompass anticipated profits." *Id.* However, the document that the parties executed omitted the standard termination clause. Thus, the plaintiff argued that it should receive its expected profit for the entire contract, i.e., the measure of damages under the common law. The court denied the contractor's claim. It first explained that the regulations had the force of law because they had been issued pursuant to statutory authority. *Id.* Because the regulations had the force of law and applied to the contract, the court held, "there was a legal requirement that the … contract contain the standard termination clause and the contract must be read as if it did." *Id.* (citations omitted).

In *Yosemite Peak & Curry,* the National Park Service hired the plaintiff to provide shuttle services to Yosemite National Park. An addendum to the contract "provided that plaintiff was able to recover federal income taxes as a reimbursable fixed cost[.]" *Yosemite Peak & Curry,* 582 F.2d at 554. However, a regulation provided that taxes "which the contractor is required to pay … [were] allowable [as costs], except for federal income … taxes[.]" 41 C.F.R. § 1-15.205-41(a)(1) (1974). Thus, the court held "that plaintiff is not entitled to enforcement of the provisions of the express, written contract at issue here since those provisions are invalid as violative of the applicable procurement law." *Yosemite Peak & Curry,* 582 F.2d at 561.

In *Charles Beseler Co.,* the Army solicited bids for the filmstrip sound projectors. "[A]t that time the Government did not consider the projectors as commercial items," but believed that it might require modifications to the projectors or to their packaging. *Charles Beseler Co.,* 1978 WL 2409. To compensate vendors for the cost of modifying the projector, the Army included a standard "Value Engineering Incentive" (VEI) clause in the proposed contract.

10

When the contractor found that it could provide the Army with commercially available filmstrip sound projectors, the VEI clause should have been removed because the applicable regulation provided that the VEI "clause shall not be included in … contracts for commercial items[.]" ASPR 1-1702.1(b)(vii) (1978).  However, it "was overlooked and left in."  *Charles Beseler Co.,* 1978 WL 2409.  When the contracting officer refused to pay the VEI clause, the contractor argued, in its notice of appeal, "[t]he gravamen of our dispute lies in the law of contracts.  It is apparently your view that the ASPR's [Armed Services Procurement Regulations] are somehow engrafted upon the contract, and hence, supercede [sic] the contract itself.  This cannot be so as the ASPR's are essentially guidelines for your Contracting Officers and not necessarily binding upon the Contractor."  *Id.*

The Board responded that, because the applicable regulation "mandated that a VEI clause not be included in contracts for commercial [,]" the "[a]ppellant's argument ... fails to fully appreciate the force and effect of ASPR as law."  *Id.*  After this foreshadowing of their decision to reject the plaintiff's argument, the Board asked whether "the contracting officer exceed his authority in inserting the VEI clause in the contract."  *Id.*  It reasoned that "if the answer is in the affirmative, is the VEI clause void."  *Id.*  The Board held that because the regulations forbade awarding a VEI to a contractor supplying a commercial item, "the contracting officer went beyond the scope of his authority when the VEI clause was inserted into the contract, whether deliberate or inadvertent, under the facts in this appeal.  Therefore, the VEI clause is an invalid and unenforceable provision in this contract."  *Id.* (citing *Yosemite Park & Curry Co.*).

### E. Clause 52.222-4 does not support the Plaintiffs' claims.

This case raises the same issues faced by courts in *G.L. Christian, Yosemite Park & Curry Co.,* and *Charles Beseler Co.* The Charles Beseler Company argued that "the ASPR's are essentially guidelines for … Contracting Officers and not necessarily binding" and, therefore the regulations are not "engrafted upon the contract, and hence," do not "supercede [sic] the contract itself" whereas the Plaintiffs in this case argue that "[t]he 'guidance' in FAR Parts 1-51, does not supersede what the parties agree to in their contract. … language from Parts 1-51 is not incorporated into contracts." Because the Plaintiffs have cited no case law supporting their position and have not identified any allegations that distinguish their complaint from any of the cases discovered by this court's research, this court adopts the analysis of those cases and holds that any task order performed outside of the United States should be read as if it did not contain Clause 52.222-4, no matter what the contract clause matrix may indicate.

Thus, in the first two counts of their complaint, the Plaintiffs have not stated a claim for which relief can be granted. Pursuant to their request, the Plaintiffs may amend their complaint to allege any facts that would support a claim for relief consistent with this opinion.

### III. COUNT III, THE INDIVIDUAL EMPLOYMENT CONTRACTS.

In addition to their claims for overtime pay under the LOGAP III contract, the Plaintiffs alleged that the Defendants violated standard employment contracts that each individual Plaintiff executed with the Defendants. Those contracts all contain substantially identical terms. Doc. 25, Exh. 5. In these individual contracts, the Defendants promised to pay "uplift pay," a term referring to a variety of bonuses paid as a "Foreign Service Bonus," "Work Area Differential," and "Hazard Pay." The Plaintiffs allege that they did not receive uplift pay for the hours that they worked exceeding 40 hours per week. Doc. 10, ¶54. They also allege that

the Defendants miscalculated the precise amounts owed. Doc. 10, ¶¶28-29, 55. Thus, the Plaintiffs' third count may be split into two counts, a count relating to uplift pay count and a count relating to miscalculation. The individual employment contracts on which the Plaintiffs base their request for uplift pay for hours above 40 hours per week contain a clause prohibiting just such payments. Thus, the Plaintiffs have not alleged any facts that would entitle them to relief for uplift pay for those hours worked over 40 hours.

In the second half of their third count, the Plaintiffs allege that the Defendants underpaid them. Doc. 10, ¶¶52-56. Although the Plaintiffs did not identify any instances of miscalculation in their complaint, they are not obligated to do so because:

> the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. … Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.

*Conley,* 355 U.S. at 47-48.

Thus, both parties are entitled to request specific evidence of any miscalculations from each other pursuant to the relevant discovery rules. If no evidence of any miscalculation exists, then Rule 56, not Rule 12(b)(6), provides the proper method of addressing the Plaintiffs' claims.

**ORDER**

Accordingly, it is hereby ORDERED:

(1) The first two counts of the Plaintiffs' complaint do not state a claim upon which relief may be granted.

(2) The third count of the Plaintiffs' complaint has not stated a claim upon which relief can be granted to the extent that the Plaintiffs' complaint alleges that the Defendants failed to pay uplift pay for each hour worked in excess of 40 hours per week.

(3) The third count of the Plaintiffs' complaint has stated a complaint upon which relief can be granted, to the extent that it alleges that the Defendants underpaid the Plaintiffs according to terms of any individual employment contracts.

(4) Because the Plaintiffs' alleged, in the most general terms, that the Defendants violated the LOGCAP III contract, they may amend their complaint to allege facts that support a claim for overtime pay for any task orders performed within the United States.

SIGNED at Houston, Texas, this 25th day of September, 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE